**Michael Grinblat** (4159752)
5215 65th Pl., #5D
Maspeth, NY 11378
Tel: (347) 796-0712
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERNICE FRIMPONG, | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **MUKTI E 163RD PETROLEUM INC., 163 MP PETROLEUM LLC, WASHINGTON/163RD ST. LLC,** | **CASE NO.: 24-cv-7770** |
| Defendants. | **JURY DEMANDED** |

## CIVIL COMPLAINT

BERNICE FRIMPONG (the "Plaintiff"), as and for her complaint against MUKTI E

163RD PETROLEUM INC., 163 MP PETROLEUM LLC, and WASHINGTON/163RD ST. LLC

(the "Defendants"), respectfully brings before the Court the below allegations.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA")

   to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against

   on the basis of disability and was denied full and equal enjoyment of the goods, services,

   facilities, privileges, advantages, or accommodations of the place of public accommodation

   owned, leased, leased to, controlled, managed, or operated, by Defendants.

2. Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3. Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district.

7. Venue is also proper in this district because Defendants' property, the public accommodation, which is the subject of this action, is both located in, and does business within, this judicial district.

## PARTIES

8. Plaintiff is, and at all times material to this litigation has been, a resident of the Bronx County, New York.

9. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

10. All references to "BP Shop" in this complaint are made regarding the store BP Shop, 481 E 163rd Street, Bronx, NY 10451.

11. All references to "BP Gas Station" in this complaint are made regarding the BP gas station, 481 E 163rd Street, Bronx, NY 10451.

12. All references to the "Parking Lot" in this complaint are made regarding the parking lot, on which both BP Shop and BP Gas Station are located, 481 E 163rd Street, Bronx, NY 10451.

13. Plaintiff's complaint stems from the discrimination she experienced in the Parking Lot of BP Gas Station, where she had difficulties maneuvering her wheelchair to make a purchase at BP Shop, due to the architectural barriers in the Parking Lot, which were unlawfully steep accessible spaces and access aisle.

14. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that WASHINGTON/163RD ST. LLC is the owner of the real

property – a commercial lot, on which BP gas station and BP Shop are located – identified on the NYC Tax Map of the Bronx County as Block 2368, Lot 2 (the "Commercial Lot"), located at 481 E 163rd Street, Bronx, NY 10451.

15. BP Shop is a store located on the Commercial Lot.

16. BP gas station is also located on the Commercial Lot.

17. The Notice of Inspection, issued by the New York State Department of Agriculture and Markets, is displayed on the wall inside of BP Shop. It states that Defendant MUKTI E 163RD PETROLEUM INC. is the store's owner.

18. Plaintiff is informed and believes that MUKTI E 163RD PETROLEUM INC. is BP Shop's owner and/or its operator.

19. Defendant MUKTI E 163RD PETROLEUM INC. leases the Commercial Lot, on which BP Shop and BP gas station are located, from the lot's owner, Defendant WASHINGTON/163RD ST. LLC.

20. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. operated BP Shop.

21. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. controlled BP Shop.

22. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. managed BP Shop.

23. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. maintained BP Shop.

24. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. designed BP Shop.

25. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. renovated BP Shop.

26. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. altered BP Shop.

27. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. constructed BP Shop.

28. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. erected BP Shop.

29. After January 26, 1992, Defendant MUKTI E 163RD PETROLEUM INC. built BP Shop.

30. After Plaintiff paid at the counter in September 2024, BP Shop's cashier gave her a receipt, which contained the name of Defendant 163 MP PETROLEUM LLC, which Plaintiff is informed and believes to be the store's owner and/or its operator.

31. Defendant 163 MP PETROLEUM LLC leases the Commercial Lot, on which BP Shop and BP gas station are located, from the lot's owner, Defendant WASHINGTON/163RD ST. LLC.

32. After January 26, 1992, Defendant 163 MP PETROLEUM LLC operated BP Shop.

33. After January 26, 1992, Defendant 163 MP PETROLEUM LLC controlled BP Shop.

34. After January 26, 1992, Defendant 163 MP PETROLEUM LLC managed BP Shop.

35. After January 26, 1992, Defendant 163 MP PETROLEUM LLC maintained BP Shop.

36. After January 26, 1992, Defendant 163 MP PETROLEUM LLC designed BP Shop.

37. After January 26, 1992, Defendant 163 MP PETROLEUM LLC renovated BP Shop.

38. After January 26, 1992, Defendant 163 MP PETROLEUM LLC altered BP Shop.

39. After January 26, 1992, Defendant 163 MP PETROLEUM LLC constructed BP Shop.

40. After January 26, 1992, Defendant 163 MP PETROLEUM LLC erected BP Shop.

41. After January 26, 1992, Defendant 163 MP PETROLEUM LLC built BP Shop.

42. Defendant WASHINGTON/163RD ST. LLC owns the Commercial Lot.

43. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC altered BP Shop.

44. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC controlled BP Shop.

45. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC maintained BP Shop.

46. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC designed BP Shop.

47. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC constructed BP Shop.

48. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC erected BP Shop.

49. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC built BP Shop.

50. After January 26, 1992, Defendant WASHINGTON/163RD ST. LLC renovated BP Shop.

51. After January 26, 1992, BP Shop was and is in the building erected on the Commercial Lot.

52.  After January 26, 1992, BP Shop was and is in the building constructed on the Commercial Lot.

53. After January 26, 1992, BP Shop was and is in the building built on the Commercial Lot.

54. MUKTI E 163RD PETROLEUM INC. operates BP Shop in the building owned by Defendant WASHINGTON/163RD ST. LLC.

55. 163 MP PETROLEUM LLC operates BP Shop in the building owned by Defendant WASHINGTON/163RD ST. LLC.

56. Defendant WASHINGTON/163RD ST. LLC leases the Commercial Lot to Defendant MUKTI E 163RD PETROLEUM INC.

57. Defendant WASHINGTON/163RD ST. LLC leases the Commercial Lot to Defendant 163 MP PETROLEUM LLC.

58. BP Shop, the building in which it is located, and the Commercial Lot, on which the building was built, are hereinafter referred to both by their names and as the "Subject Facility."

59. MUKTI E 163RD PETROLEUM INC. is an American for-profit corporation organized under the laws of New York State.

60. MUKTI E 163RD PETROLEUM INC. is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

61. NYS DOS maintains entity information for MUKTI E 163RD PETROLEUM INC. in its Corporation and Business Entity Database ("CBED").

62. NYS DOS CBED maintains a corporate record for MUKTI E 163RD PETROLEUM INC.

63. NYS DOS CBED's corporate record for MUKTI E 163RD PETROLEUM INC. states that its chief executive officer's name and address are Charanjit Singh, 7910 Springfield Boulevard, Oakland Gardens, NY 11364.

64. NYS DOS CBED's corporate record for MUKTI E 163RD PETROLEUM INC. states that its principal executive office is located at 7910 Springfield Boulevard, Oakland Gardens, NY 11364.

65. NYS DOS CBED's corporate record for MUKTI E 163RD PETROLEUM INC. contains no information regarding its registered agent's name and address.

66. MUKTI E 163RD PETROLEUM INC. does not have a registered agent.

67. The name and address of MUKTI E 163RD PETROLEUM INC.'s registered agent are not known to Plaintiff.

68. NYS DOS CBED's corporate record for MUKTI E 163RD PETROLEUM INC. does not state the entity's primary location name and address.

69. NYS DOS CBED record for MUKTI E 163RD PETROLEUM INC. states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is MUKTI E 163RD PETROLEUM INC., 8344 242 Street, Bellerose, NY 11426.

70. 163 MP PETROLEUM LLC is an American for-profit limited liability company organized under the laws of New York State.

71. 163 MP PETROLEUM LLC is licensed to conduct business in the State of New York by the NYS DOS.

72. NYS DOS maintains entity information for 163 MP PETROLEUM LLC in its CBED.

73. NYS DOS CBED maintains a corporate record for 163 MP PETROLEUM LLC.

74. NYS DOS CBED's corporate record for 163 MP PETROLEUM LLC contains no information about its chief executive officer's name and address.

75. NYS DOS CBED's corporate record for 163 MP PETROLEUM LLC contains no address of its principal executive office.

76. NYS DOS CBED's corporate record for 163 MP PETROLEUM LLC contains no information regarding its registered agent's name and address.

77. 163 MP PETROLEUM LLC does not have a registered agent.

78. The name and address of 163 MP PETROLEUM LLC's registered agent are not known to Plaintiff.

79. NYS DOS CBED's corporate record for 163 MP PETROLEUM LLC does not state the entity's primary location name and address.

80. NYS DOS CBED record for 163 MP PETROLEUM LLC states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is Manuel Pimentel, 481 E 163rd Street, Bronx, NY 10451.

81. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that the Commercial Lot is owned by WASHINGTON/163RD ST. LLC.

82. WASHINGTON/163RD ST. LLC at all relevant times was, and currently is, the owner of the Commercial Lot, on which both BP Shop and BP gas station are located.

83. WASHINGTON/163RD ST. LLC is an American for-profit limited liability company organized under the laws of New York State.

84. WASHINGTON/163RD ST. LLC is licensed to conduct business in the State of New York by the NYS DOS.

85. NYS DOS maintains entity information for WASHINGTON/163RD ST. LLC in its CBED.

86. NYS DOS CBED maintains a corporate record for WASHINGTON/163RD ST. LLC.

87. NYS DOS CBED's corporate record for WASHINGTON/163RD ST. LLC contains no information about its chief executive officer's name and address.

88. NYS DOS CBED's corporate record for WASHINGTON/163RD ST. LLC contains no address of its principal executive office.

89. NYS DOS CBED's corporate record for WASHINGTON/163RD ST. LLC contains no information regarding its registered agent's name and address.

90. WASHINGTON/163RD ST. LLC does not have a registered agent.

91. The name and address of WASHINGTON/163RD ST. LLC's registered agent are not known to Plaintiff.

92. NYS DOS CBED's corporate record for WASHINGTON/163RD ST. LLC does not state the entity's primary location name and address.

93. NYS DOS CBED record for WASHINGTON/163RD ST. LLC states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is Washington/163rd St. LLC, c/o Levites Realty, 270 Madison Avenue, Ste. 1503, New York, NY 10016.

94. MUKTI E 163RD PETROLEUM INC. signed a lease with WASHINGTON/163RD ST. LLC, in accordance with which MUKTI E 163RD PETROLEUM INC. is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the 1991 ADA Standards.

95. MUKTI E 163RD PETROLEUM INC. signed a lease with WASHINGTON/163RD ST. LLC, in accordance with which MUKTI E 163RD PETROLEUM INC. is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the 2010 ADA Standards.

96. Under that lease, MUKTI E 163RD PETROLEUM INC. is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with 28 C.F.R. §36.201.

97. Also under that lease, MUKTI E 163RD PETROLEUM INC. is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the New York State Civil Rights laws.

98. Under that lease, MUKTI E 163RD PETROLEUM INC. is also responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the New York State Human Rights laws.

99. Under that lease, MUKTI E 163RD PETROLEUM INC. is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the New York City Human Rights laws.

100.    163 MP PETROLEUM LLC signed a lease with WASHINGTON/163RD ST. LLC, in accordance with which 163 MP PETROLEUM LLC is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the 1991 ADA Standards.

101.    163 MP PETROLEUM LLC signed a lease with WASHINGTON/163RD ST. LLC, in accordance with which 163 MP PETROLEUM LLC is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the 2010 ADA Standards.

102.    Under that lease, 163 MP PETROLEUM LLC is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with 28 C.F.R. §36.201.

103.    Also under that lease, 163 MP PETROLEUM LLC is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the New York State Civil Rights laws.

104.    Under that lease, 163 MP PETROLEUM LLC is also responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the New York State Human Rights laws.

105.    Under that lease, 163 MP PETROLEUM LLC is responsible for ensuring that BP Shop, BP Gas Station, and the Parking Lot are in compliance with the New York City Human Rights laws.

106.    Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, WASHINGTON/163RD ST. LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the ADA.

107.    Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, WASHINGTON/163RD ST. LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Civil Rights laws.

108.    Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, WASHINGTON/163RD ST. LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Human Rights laws.

109.    Any contractual provisions stating otherwise notwithstanding, the landlord and owner of the property, WASHINGTON/163RD ST. LLC, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York City Human Rights laws.

110.    Defendants are jointly and severally liable for the design of BP Shop, BP Gas Station, and the Parking Lot.

111.    Defendants are jointly and severally liable for the construction of BP Shop, BP Gas Station, and the Parking Lot.

112.    Defendants are jointly and severally liable for the maintenance of BP Shop, BP Gas Station, and the Parking Lot.

113.    Defendants are jointly and severally liable for the management of BP Shop, BP Gas Station, and the Parking Lot.

114.    Defendants are jointly and severally liable for the control of BP Shop, BP Gas Station, and the Parking Lot.

115.    Defendants are jointly and severally liable for the alteration of BP Shop, BP Gas Station, and the Parking Lot after January 26, 1992.

116.    Defendants are jointly and severally liable for the operation of BP Shop, BP Gas Station, and the Parking Lot.

117.    After March 15, 2012, either one of Defendants, or all of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to BP Shop, BP Gas Station, and the Parking Lot.

118.    BP Shop is a store and is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

119.    BP Gas Station is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104 Place of public accommodation (6),

the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

## STATUTORY SCHEME

120.     On July 26, 1990, Republican President George H. W. Bush, who himself subsequently became disabled and had to rely on a wheelchair later in his life, signed the ADA into law, which extended essential civil rights to individuals with disabilities.

121.     That law had been championed by Senator Robert J. Dole, who himself had suffered from a significant disability, which resulted from the wounds he has received while fighting in Italy during liberation of the world from the fascists' dictatorship during World War II.

122.     On that day, July 26, 1990, the United States of America enacted the ADA, establishing extremely important and incontrovertibly indispensable civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

123.     Congress made the following findings:

      a.  Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

      b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

c.  Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

d.  Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

124.    Furthermore, Congress also explicitly stated that the ADA had to:

       a.  Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

       b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

       c.  Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

125.    Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

126.    Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or

16

fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

127.    The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

128.    ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

129.    It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

130.    Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

131.    The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

132.    BP Shop affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(E).

133.    BP Shop affects interstate commerce within the meaning of 28 C.F.R. §36.104 Place of public accommodation (5).

134.    BP Gas Station affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(E).

135.    BP Gas Station affects interstate commerce within the meaning of 28 C.F.R. §36.104 Place of public accommodation (6).

136.    Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

137.    Discriminatory intent is not required to establish liability under the ADA.

138.    Discriminatory intent is not required to establish liability under the New York State Civil Rights Laws.

139.    Discriminatory intent is not required to establish liability under the New York State Human Rights laws.

140.    Discriminatory intent is not required to establish liability under the New York City Human Rights laws.

141.    One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers
>
> in existing facilities, including communication barriers that
>
> are structural in nature, where such removal is readily

achievable, i.e., easily accomplishable and able to be carried

out without much difficulty or expense.

28 C.F.R. §36.304

142. Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability an opportunity to participate in, or benefit from services or accommodations at BP Shop, BP Gas Station, and the Parking Lot on the basis of their disability, 28 C.F.R. §36.304.

143. Removal of the architectural barriers at BP Shop is readily achievable by Defendants.

144. Removal of the architectural barriers at BP Gas Station is readily achievable by Defendants.

145. Removal of the architectural barriers in the Parking Lot is readily achievable by Defendants.

146. At all relevant times herein, Defendants failed to remove the architectural barriers to entry for disabled individuals present at BP Shop, BP Gas Station, and the Parking Lot even though it was, and is readily achievable to remove them.

147. The New York City Department of Buildings ("DOB") maintains records regarding construction and alterations of buildings located in the Bronx.

148. Upon information and belief, Defendant WASHINGTON/163RD ST. LLC made alterations to the building, in which BP Shop is located, after March 15, 2012.

149. Because alterations to the building, in which BP Shop is located, were made after March 15, 2012, i.e. after the 1991 ADA Standards were in effect, the path of travel to BP

Shop was required to be made readily accessible to the maximum extent feasible and brought in compliance with the 1991 Standards.

150.    Upon information and belief, Defendant WASHINGTON/163RD ST. LLC made alterations to the Parking Lot after March 15, 2012.

151.    Because alterations to the Parking Lot were made after March 15, 2012, i.e. after the 1991 ADA Standards were in effect, the path of travel to BP Shop was required to be made readily accessible to the maximum extent feasible and brought in compliance with the 1991 Standards.

152.    Defendants were required to spend up to 20% of the costs of the alteration on making the path of travel from the Parking Lot to BP Shop compliant with the 1991 ADA Standards to the maximum extent feasible.

153.    Because alterations to BP Shop were made after March 15, 2012, i.e. after the 2010 ADA Standards were in effect, the path of travel from the Parking Lot to BP Shop was required to be made readily accessible and brought in compliance with the 2010 Standards to the maximum extent feasible. Defendants were required to spend up to 20% of the costs of alterations on making the path of travel from the Parking Lot to BP Shop readily accessible to the maximum extent feasible.

154.    Because alterations to the Parking Lot were made after March 15, 2012, i.e. after the 2010 ADA Standards were in effect, the path of travel from the Parking Lot to BP Shop was required to be made readily accessible and brought in compliance with the 2010 Standards to the maximum extent feasible. Defendants were required to spend up to 20% of the costs of alterations on making the path of travel from the Parking Lot to BP Shop readily accessible to the maximum extent feasible.

155.    Plaintiff is informed and believes, and therefore alleges, that construction work in BP Shop was performed after March 15, 2012.

156.    Plaintiff is informed and believes, and therefore alleges, that alterations in BP Shop were made after March 15, 2012.

157.    Plaintiff is informed and believes, and therefore alleges, that BP Shop was modified after March 15, 2012.

158.    Plaintiff is informed and believes, and therefore alleges, that construction work in the Parking Lot was performed after March 15, 2012.

159.    Plaintiff is informed and believes, and therefore alleges, that alterations in the Parking Lot were made after March 15, 2012.

160.    Plaintiff is informed and believes, and therefore alleges, that the Parking Lot was modified after March 15, 2012.

161.    "'[D]iscrimination' includes, with respect to a facility or part thereof that is altered by, on behalf [**12] of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, *a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities*, including individuals who use wheelchairs."

Roberts v. Royal Atl. Corp., 542 F3d 363, 368 [2d Cir 2008])

162. "Where the entity is undertaking an alteration that affects or could affect usability of or *access to an area of the facility containing a primary function*, the entity shall also make the alterations in such a manner that, to *the maximum extent feasible, the path of travel* to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are *not disproportionate to the overall alterations* in terms of cost and scope (as determined under criteria established by the Attorney General). 42 U.S.C. § 12183(a)(2) (emphasis added)."

Id.

163. "We must therefore first determine whether a challenged facility (or part thereof) has been "altered" in "a manner that affects or could affect its usability." Id.

164. ""If alterations have been made, a defendant "discriminates" if those altered areas – and paths of travel to altered areas that "contain a primary function" – are not made readily accessible to disabled individuals "to the maximum extent feasible."" Id.

165. "Even in the absence of alterations, a defendant nonetheless "discriminates" if it fails to remove any existing barriers to accessibility where such removal "is readily achievable."" Id. § 12182(b)(2)(A)(iv). Roberts v. Royal Atl. Corp., 542 F3d 363, 369 [2d Cir 2008]

166.      Defendant MUKTI E 163RD PETROLEUM INC. made alterations to BP Shop and/or the Parking Lot after March 15, 2012.

167.      Defendant MUKTI E 163RD PETROLEUM INC. made alterations to BP Shop and/or the Parking Lot after March 15, 2012, and did not make path of travel from the Parking Lot to BP Shop readily accessible and compliant with the 1991 ADA Standards to the maximum extent feasible by spending up to 20% of the costs of the alterations.

168.      Defendant 163 MP PETROLEUM LLC made alterations to BP Shop and/or the Parking Lot after March 15, 2012.

169.      Defendant 163 MP PETROLEUM LLC made alterations to BP Shop and/or the Parking Lot after March 15, 2012, and did not make path of travel from the Parking Lot to BP Shop readily accessible and compliant with the 1991 ADA Standards to the maximum extent feasible by spending up to 20% of the costs of the alterations.

170.      Defendant WASHINGTON/163RD ST. LLC made alterations to BP Shop and/or the Parking Lot after March 15, 2012.

171.      Defendant WASHINGTON/163RD ST. LLC made alterations to BP Shop and/or the Parking Lot after March 15, 2012, and did not make path of travel from the Parking Lot to BP Shop readily accessible and compliant with the 1991 ADA Standards to the maximum extent feasible by spending up to 20% of the costs of the alterations.

172.      Defendants failed to remediate ADA violations in BP Shop after March 15, 2012, even when remediations were readily achievable.

173.      After March 15, 2012, Defendants failed to make BP Shop readily accessible to the maximum extent feasible for individuals with disabilities.

174.    Defendants failed to remediate ADA violations in the Parking Lot after March 15, 2012, even when remediations were readily achievable.

175.    After March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

176.    Plaintiff is a 42-year-old-woman.

177.    Plaintiff had been diagnosed with poliomyelitis by her treating physician when she was three years old.

178.    Plaintiff's left leg is shorter than her right leg.

179.    Plaintiff had not been able to walk for over 20 years.

180.    Plaintiff's physician had prescribed her a wheelchair.

181.    Plaintiff depends on her wheelchair for mobility and uses it every day.

182.    Plaintiff cannot move about without her wheelchair.

183.    Plaintiff uses a manual wheelchair and moves about by rotating its wheels with her hands.

184.    When Plaintiff travels in a van or car, she needs an appropriate and statutorily mandated access aisle next to an accessible parking space to exit a vehicle with her wheelchair.

185.    Plaintiff requires an accessible parking space located close to an entrance of a facility.

186.    Routes connecting accessible parking spaces and all features, goods, and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose danger of tipping, catching wheels, or falling.

187.    Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…. The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.
>
> 28 C.F.R. §36.104 (italics in original).

188.    There are more than nine parking spaces in the Parking Lot.

189.    Two parking spaces in the Parking Lot are identified as accessible.

190.    There is one access aisle in the Parking Lot, located next to the Left Accessible Parking Space.

191.    In September 2024 Plaintiff came to Defendants' BP Shop to buy food in it.

192.    When Plaintiff came to BP Shop, she expected to have full and equal access to, and the benefits of, all the accommodations and services offered by Defendants.

193.    Plaintiff purchased food in BP Shop and obtained a receipt.

194.    Plaintiff left BP Shop's Parking Lot in the accessible van.

195.    To pick up Plaintiff, the accessible van parked in the Left Accessible Parking Space in the Parking Lot.

196.     Plaintiff had difficulties controlling the wheels of her manual wheelchair with her hands in the accessible space of the Parking Lot because of its unlawfully steep slope.

197.     Plaintiff had difficulties controlling her manual wheelchair and rotating its wheels with her hands when she was transferring from the ground onto the accessible van in the Parking Lot's Left Accessible Parking Space because of its unlawfully steep slope.

198.     Frustrated, disappointed, and humiliated, Plaintiff left BP and the Parking Lot.

199.     Because of the architectural barriers in the Parking Lot, Plaintiff has difficulties with shopping at BP Shop.

200.     Plaintiff wants to continue shopping at BP Shop.

201.     Plaintiff wants to continue using the Parking Lot to visit BP Shop.

202.     The Parking Lot was designed by Defendants, who did not have Plaintiff and her needs in mind, to accommodate her and facilitate her access to BP Shop.

203.     The Parking Lot was designed by Defendants, who disregarded the accessibility requirements of Plaintiff by failing to accommodate her and facilitate her access to BP Shop.

204.     The Parking Lot was not designed to accommodate the needs of Plaintiff.

205.     The Parking Lot was not constructed to accommodate the needs of Plaintiff.

**Plaintiff Intends to Return to BP Shop**

206.     BP Shop is in the Morrisania area of the Bronx.

207.     Plaintiff lives in the Morris Heights area of the Bronx.

208.     Plaintiff lives approximately 2.4 miles from BP Shop by car.

209.     Plaintiff lives approximately 15 minutes away from BP Shop by car.

210.     Plaintiff lived in the Morrisania area of the Bronx in the past.

211.     Plaintiff is very familiar with the Morrisania area of the Bronx and enjoys coming there to shop and dine.

212.     Plaintiff came to the Morrisania area of the Bronx approximately once per month in 2023.

213.     Plaintiff came to the Morrisania area of the Bronx approximately once per month in 2024.

214.     Plaintiff passes next to BP Shop when she visits the Morrisania and Forest Houses areas of the Bronx.

215.     BP Shop is a convenient store for Plaintiff to shop at when she visits the Morrisania area of the Bronx.

216.     Plaintiff intends to visit and shop in BP Shop as soon as the architectural barriers are removed.

217.     Plaintiff intends to shop in BP Shop when she visits the Morrisania area of the Bronx in the future.

218.     Plaintiff intends to shop in BP Shop in 2024.

219.     Plaintiff intends to shop in BP Shop in 2025.

220.     Plaintiff intends to shop in BP Shop in 2026.

221.     Plaintiff intends to shop in BP Shop in the subsequent years.

**Plaintiff is a Tester**

222.     Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting her civil rights.

223.     Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

224.    Completely independent of her personal desire to have access to BP Shop and the Parking Lot free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

225.    As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

226.    Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

227.    When Plaintiff determines that barriers to access are unlawful, she initiates a legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

228.    Following completion of a legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

229.    As a tester, Plaintiff visited BP Shop to encounter architectural barriers to access.

230.    As a tester, Plaintiff visited the Parking Lot to encounter architectural barriers to access.

231.    As a tester, Plaintiff personally encountered the unlawfully steep slope in the access aisle of BP Shop's Parking Lot.

232.    As a tester, Plaintiff personally encountered the unlawfully steep slope in the accessible parking space of BP Shop's Parking Lot.

233.    As a tester, Plaintiff had difficulties shopping in BP Shop because of the ADA violations in the Parking Lot.

234.    Following conclusion of this lawsuit, Plaintiff intends to return to BP Shop as both a customer, who wants to shop in it, and as a tester to determine whether Defendants remediated the ADA violations in the Parking Lot.

235.    Plaintiff's motivation to return to BP Shop in part stems from her desire to utilize ADA litigation to make her community more accessible for her and other disabled individuals, who cannot visit it because of the architectural barriers.

236.    Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to BP Shop and its Parking Lot as soon as they are accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to remediate the ADA violations.

237.    Following conclusion of this lawsuit, Plaintiff intends to visit BP Shop at least four times per year to ensure that Defendants comply with the ADA and to shop in it.

238.    Plaintiff is confident that Defendants will not remediate the ADA violations in the Parking Lot without the Court's intervention.

239.    Plaintiff will continue to suffer discrimination without the Court's intervention.

240.    Plaintiff will enforce the injunction once it is issued by the Court.


**Violations of Title III in BP Shop**

241.    Due to the unlawful architectural barriers in BP Shop's Parking Lot, Plaintiff did not have an accessible path of travel from it to BP Shop that complied with the ADA requirements and had difficulties with shopping at the store.

242.     Since January 26, 1992, Defendants failed to make the path of travel from the Parking Lot to BP Shop readily accessible to the maximum extent feasible for individuals with disabilities.

243.     Since January 26, 1992, Defendants failed to make the path of travel from the Parking Lot to BP Shop readily accessible to the maximum extent feasible for individuals with disabilities by spending up to 20% of the costs of alterations made to BP Shop and/or the Parking Lot.

244.     Since January 26, 1992, Defendants failed to make certain that the path of travel from the Parking Lot to BP Shop was readily accessible to the maximum extent feasible for individuals with disabilities.

245.     Since January 26, 1992, Defendants failed to make certain that the Parking Lot complied with 2010 ADA Standards when it was readily achievable to do so.

246.     Defendants failed to bring the Parking Lot in compliance with 1991 ADA Standards when it was readily achievable to do so.

247.     Since January 26, 1992, Defendants engaged in unlawful practices in violation of the ADA.

248.     Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York State Civil laws.

249.     Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York State Human Rights laws.

250.     Since January 26, 1992, Defendants engaged in unlawful practices in violation of the New York City Human Rights laws.

251.     Since March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

252.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA.

253.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Civil laws.

254.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Human Rights laws.

255.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York City Human Rights laws.

256.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

257.     Since September 2024, through the present time, Defendants have engaged and continue to engage in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

258.     Due to the architectural barriers, which remain at BP Shop's Parking Lot, in violation of the ADA, Plaintiff does not have an accessible path of travel from the Parking Lot to BP Shop that complies with the ADA requirements and is being discriminated against in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

259.     Plaintiff encountered architectural barriers to access BP Shop, which have made it difficult for her to visit and shop at the store and caused her embarrassment, humiliation, and frustration.

260.     Because BP Shop is a place of public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

261.     Plaintiff has encountered architectural barriers to access BP Shop in the Parking Lot, which have greatly inconvenienced her.

262.     BP Shop violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

263.     In 1991, ADA Standards for Accessible Design Title III Regulation 28 CFR Part 36 was published ("1991 Standards").

264.     The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

265.     Defendants are discriminating against Plaintiff, because at BP Shop and its Parking Lot they are denying her access to, as well as full and equal enjoyment of, the goods,

services, facilities, privileges, advantages, and/or accommodations of the store by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to those listed below.

266.     There are more than nine parking spaces in the Parking Lot.

267.     There are two accessible parking spaces in the Parking Lot.

268.     One of the two accessible parking spaces in the Parking Lot is identified as such by the two blue lines on the pavement. That parking space is located immediately to the right of the access aisle and three spaces to the left of the other accessible parking space from the point of view of a person driving into the parking space. In this complaint, that parking space is going to be referred to as the "Left Accessible Parking Space."

269.     Another accessible parking space in the Parking Lot is identified as such by the accessibility identification sign, which is attached to the wall in front of the accessible parking space. That accessible parking space is not identified on the pavement by blue painted lines. There is no access aisle adjacent to it. That accessible parking space is located three spaces to the right of the other accessible parking space from the point of view of a person driving into the space. In this Complaint, that accessible parking space is referred to as the "Right Accessible Parking Space."

270.     There is an access aisle immediately to the left of the Left Accessible Parking Space. In this complaint it is referred to as the "Access Aisle."

271.     "**Signage.** Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (see 4.30.7). Spaces complying with 4.1.2(5)(b) shall have an additional sign "Van-Accessible" mounted below the symbol of accessibility. Such

signs shall be located so they cannot be obscured by a vehicle parked in the space." 1991 Standards §4.6.4*

272.        "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

273.        There is no identification sign identifying the Left Accessible Parking Space in the Parking Lot in violation of 1991 Standards §4.6.4*

274.        There is no identification sign identifying the Left Accessible Parking Space in the Parking Lot in violation of 2010 Standards §502.6.

275.        "**Parking Spaces.** Accessible parking spaces shall be at least 96 in (2440 mm) wide. Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with 4.3. Two accessible parking spaces may share a common access aisle. Parked vehicle overhangs shall not reduce the clear width of an accessible route. Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 Standards §4.6.3*

276.        "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

277.    "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

278.    Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

279.    Defendants violated 1991 Standards §4.6.3*.

280.    Defendants violated 2010 Standards §Advisory 502.4.

281.    Defendants violated 2010 Standards §502.4.

282.    Left Accessible Parking Space has a running slope of 4.7%, which is equivalent to 1:21.28, in violation of 1991 Standards §4.6.3*.

283.    Left Accessible Parking Space has a running slope of 4.7%, which is equivalent to 1:21.28, in violation of 2010 Standards §502.4.

284.    Left Accessible Parking Space has a cross slope of 7.1%, which is equivalent to 1:14.08, in violation of 1991 Standards §4.6.3*.

285.    Left Accessible Parking Space has a cross slope of 7.1%, which is equivalent to 1:14.08, in violation of 2010 Standards §502.4.

286.    Access Aisle has a running slope of 4.8%, which is equivalent to 1:20.83, in violation of 1991 Standards §4.6.3*.

287.    Access Aisle has a running slope of 4.8%, which is equivalent to 1:20.83, in violation of 2010 Standards §502.4.

288.    Right Accessible Parking Space has a running slope of 5.8%, which is equivalent to 1:17.24, in violation of 1991 Standards §4.6.3*.

289.     Right Accessible Parking Space has a running slope of 5.8%, which is equivalent to 1:17.24, in violation of 2010 Standards §502.4.

290.     Right Accessible Parking Space has a cross slope of 5.6%, which is equivalent to 1:17.86, in violation of 1991 Standards §4.6.3*.

291.     Right Accessible Parking Space has a cross slope of 5.6%, which is equivalent to 1:17.86, in violation of 2010 Standards §502.4.

292.     Plaintiff intends to visit BP Shop again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, detailed in this Complaint, are removed. The purpose of that return visit would be to be both a customer, who comes to enjoy goods and services offered at BP Shop, as well as to determine whether, and when, BP Shop has been made accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so that other disabled individuals would be able to enjoy BP Shop in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ends.

293.     Plaintiff intends to visit BP Shop and its Parking Lot again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire whatsoever, to continue to repeatedly subject herself to Defendants' unequal treatment and blatant discrimination of her through their architectural barriers to equal access and engage in the futile gesture of attempting to patronize BP Shop, a business place of public accommodation, known to Plaintiff to have architectural barriers to equal access for wheelchair users, until Defendants remediate the ADA violations at BP Shop and the Parking Lot.

294.    Plaintiff has used her manual wheelchair to ride from the Parking Lot's accessible parking space to BP Shop as a customer, as well as an independent advocate for the disabled, encountered and observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible and will continue to suffer discrimination as a result of the illegal barriers to equal access present at BP Shop until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make BP Shop equally accessible to all.

295.    Plaintiff will continue to suffer discrimination without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation, Plaintiff requires an inspection of the Parking Lot to measure and photograph architectural barriers that are in violation of the ADA to determine areas of non-compliance with the law.

296.    The discriminatory violations described above are not an exhaustive list of Defendants' violations of the ADA and barriers to equal access to BP Shop, because Plaintiff was unable to access and assess all areas of BP Shop and the Parking Lot due to the architectural barriers encountered. A complete list of the Parking Lot's ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of remedial measures necessary to remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

297.    Defendants have failed to make BP Shop and its Parking Lot accessible to Plaintiff given her disabilities. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of

usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

298.     Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at BP Shop and the Parking Lot in violation of 28 CFR §36.202 and §36.211.

299.     The architectural barriers in the Parking Lot have a discriminative effect on Plaintiff, as a wheelchair user, making her unable to experience the same access to the goods, services, facilities, privileges, advantages, and accommodations of BP Shop and the Parking Lot as Defendants' able-bodied customers.

300.     Defendants have failed to remove architectural barriers to accessibility to BP Shop in the Parking Lot in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

301.     Since March 15, 2012, Defendants have altered BP Shop and/or the Parking Lot.

302.     **New construction and alterations. (a) Design and construction.** "(1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

303.     **"(2) Exception for structural impracticability.** (i) Full compliance with the requirements of this section is not required where a public entity can demonstrate that it is structurally impracticable to meet the requirements. Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features. (ii) If full compliance with

this section would be structurally impracticable, compliance with this section is required to the extent that it is not structurally impracticable. In that case, any portion of the facility that can be made accessible shall be made accessible to the extent that it is not structurally impracticable." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

304.    "**(b) Alterations.** (1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

305.    Defendants failed to make BP Shop and the Parking Lot readily accessible to disabled people, including those who use wheelchairs.

306.    The foregoing violations are violations of the 1991 ADAAG, and the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

307.    The removal of the physical barriers, dangerous conditions, and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

308.    It is readily achievable to remediate the ADA violations described above as costs do not exceed benefits.

309.     Removal of the physical barriers, dangerous conditions, and ADA violations present at BP Shop and the Parking Lot is readily achievable because of the site conditions, the structural design of the store, and the straightforward nature of the necessary modifications.

310.     To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

311.     Removal of the architectural barriers and dangerous conditions at BP Shop and the Parking Lot is readily achievable because of relative low cost of modifications to comply with the 1991 and 2010 ADA Standards.

312.     Defendants have financial resources to make the modifications, including the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

313.     At the time of Plaintiff's visit to BP Shop, it was not readily accessible for individuals with disabilities in violation of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

314.     It was structurally practicable for Defendants to meet the requirements of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

315.     At the time of Plaintiff's attempt to visit BP Shop, it was not readily accessible for individuals with disabilities in violation of 2010 ADA Standards.

316.     It was structurally practicable for Defendants to meet the requirements of 2010 ADA Standards.

317.     At the time of Plaintiff's attempt to visit BP Shop, it was not in compliance with the accessibility standards of Title III of 1991.

318.     At the time of Plaintiff's attempt to visit BP Shop, the path of travel to it from the Parking Lot was not designed and/or constructed in a manner that complied with the accessibility standards of Title III of 1991.

319.     BP Shop and/or the Parking Lot were altered since 1991 and yet were not in compliance with the accessibility standards of Title III of 1991.

320.     At the time of Plaintiff's visit to BP Shop, it was not in compliance with the accessibility standards of Title III of 1991.

321.     At the time of Plaintiff's visit to BP Shop, the path of travel from the Parking Lot to the BP Shop was not in compliance with 2010 ADA Standards.

322.     At the time of Plaintiff's attempt visit to BP Shop, the path of travel from the Parking Lot to the store was not constructed in a manner that complied with 2010 ADA Standards, which made it difficult for Plaintiff to enter the store on her manual wheelchair.

323.     By continuing to maintain and/or operate BP Shop with discriminatory conditions in its Parking Lot in violation of the ADA, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive her of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

324.     Defendants are required to remove existing architectural barriers to the disabled when such removal is readily achievable for their places of public accommodation that have existed prior to January 26, 1992. 28 CFR 36.304(a).

325.　　As there has been an alteration to Defendants' place of public accommodation since January 26, 1992, they are required to ensure to the maximum extent feasible that the altered portions of BP Shop and the Parking Lot are readily accessible to and usable by individuals with disabilities, including people who use wheelchairs. 28 CFR 36.402.

326.　　BP Shop and/or the Parking Lot were constructed after January 26, 1992, as defined in 28 CFR 36.401, and thus they must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

327.　　To date, Defendants have failed to comply with the above mandates.

328.　　Defendants failed to make BP Shop "readily accessible to and usable by individuals with disabilities," even though alteration to it and/or the Parking lot were commenced after January 26, 1992, and/or after March 15, 2012, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

329.　　Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

330.　　Defendants violated their obligation to remove architectural barriers to let disabled Plaintiff enjoy goods and services provided by BP Shop, the public accommodation under their control, thus discriminating against her.

331.　　Plaintiff's requested relief serves public interest.

332.　　To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the 1991 and/or 2010 ADA standards, still exist in BP Shop and/or its Parking Lot and have not been remediated, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

333.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make BP Shop readily accessible to persons with disabilities.

334.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make BP Shop readily accessible to persons with disabilities.

335.     Defendants should have removed the architectural barriers by January 26, 1992. To date, they have failed to comply with that mandate.

336.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

337.     It was not structurally impracticable for Defendants to make BP Shop and the Parking Lot accessible.

338.     Removal of all architectural barriers existing at BP Shop was, and is, readily achievable by Defendants.

339.     Accommodations to Plaintiff and removal of the architectural barriers for individuals with disabilities at BP Shop and the Parking Lot by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

340.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in BP Shop and the Parking Lot.

341.     Defendants' failure to make BP Shop accessible denied Plaintiff an equal opportunity to participate in, or to benefit from, services, or accommodations, provided at the store, because of her disability.

342.     The effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of BP Shop and to otherwise adversely affect her status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

343.     BP Shop is not accessible to, or readily usable by, individuals with disabilities.

344.     Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the path of travel from the Parking Lot to BP Shop, to make it accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close BP Shop until the required modifications are completed.

345.     Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of BP Shop is legally inexcusable.

346.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

347.     The inexcusability of Defendants' actions is exacerbated by the fact that over 30 years have passed since the effective date of Title III of the ADA. During that time, they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but did not do so.

348.     By not removing the architectural barriers, which barred Plaintiff's access, inconvenienced, embarrassed, and humiliated her, Defendants gave a crystal-clear message to Plaintiff that her patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

349.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

350.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

> NYS Executive Law §296(2)(a)

351.     BP Shop is a place of public accommodation, as defined in New York State Human Rights Law §292(9).

352.     Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

353.     Defendants are in violation of the New York State Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of BP Shop.

354.     Defendants do not provide Plaintiff with equal opportunity to use their public accommodation, BP Shop.

355.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access to BP Shop in violation of Executive Law §296(2)(c)(iii).

356.     Defendants have not provided Plaintiff with evenhanded treatment in violation of New York State Human Rights Law §296.

357.     Defendants' unequal treatment of Plaintiff was demonstrated when she was discriminated against when her path of travel to BP Shop from the Parking Lot was made difficult through the architectural barriers.

358.     Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied her the accommodations, advantages, facilities, or privileges of their public accommodations, i.e. BP Shop.

359.     Defendants have demonstrated that Plaintiff's patronage of BP Shop is unwelcome, unwanted, undesirable, unacceptable, and objectionable.

360.     In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff by denying her access to BP Shop.

361.     Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

### THIRD CAUSE OF ACTION

**Violations of the New York State Civil Rights Laws**

362.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

363.     Defendants have violated Plaintiff's civil rights because of her disability.

364.     Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

365.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

366.     A copy of this Complaint is being served upon the attorney general by the United States mail, first class mail, postage prepaid.

### FOURTH CAUSE OF ACTION

**Violations of the New York City Human Rights Law**

367.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

368.     The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>
> 1. Because of any person's actual or perceived … disability …, directly or indirectly:

(a) to refuse, withhold from or deny to such

person the full and equal enjoyment, on equal

terms and conditions, of any of the

accommodations, advantages, services,

facilities or privileges of the place or provider

of public accommodation;

NYC Admin. Code §8-107(4)

369.     Defendants have not reasonably accommodated Plaintiff in violation of New York

City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

370.     In violation of the New York City Administrative Code, Defendants have

unlawfully discriminated against Plaintiff by denying her access to BP Shop by means of

the architectural barriers in its Parking Lot.

371.     Reasonable accommodations and modifications are necessary to enable Plaintiff to

enjoy non-restricted access to BP Shop.

372.     In violation of the New York City Administrative Code the owners, operators,

lessees, proprietors, managers, agents and/or employees of BP Shop have, because of the

actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from,

and denied her the accommodations, advantages, facilities, or privileges of BP Shop.

373.     In violation of the New York City Administrative Code, on the basis of Plaintiff's

disability, Defendants have demonstrated that Plaintiff's patronage of BP Shop is

unwelcome, objectionable, and not acceptable.

374.     Defendants are in violation of the New York City Human Rights Law by denying

Plaintiff full and safe access to the benefits, accommodations, and services of BP Shop.

375.     Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

376.     A copy of this Complaint is being served upon the New York City Commission on Human Rights by United States mail, first class mail, postage prepaid.

377.     Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

378.     Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have her reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28 C.F.R. §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of Defendants. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the

defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)

**COMPENSATORY AND STATUTORY MONETARY DAMAGES**

379.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York City Human Rights Law, NYC Admin. Code §8-125.

In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

50

380.    Plaintiff requests statutory monetary damages in the sum of $500 from Defendants to compensate her for their violation of New York Civil Rights Law §40-c and §40-d.

New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

381.    The reason Plaintiff requests $500 from Defendants, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this Complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here, and it is likely that they will be revealed upon inspection of BP Shop and its Parking Lot by an expert.

## INJUNCTIVE RELIEF

382.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter BP Shop to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law, and close the store until requisite modifications are completed.

383.    Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination in BP Shop.

384.    Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their BP Shop and the Parking Lot to make them readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adopt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides her with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this Complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

385.    Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that

Plaintiff would not be subject to further unlawful discrimination in BP Shop and in the Parking Lot.

## **DECLARATORY RELIEF**

386.    Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from BP Shop and the Parking Lot by Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.    Grant a permanent injunction

    i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors, and assigns from engaging in discrimination based on disability;

    ii.) Requiring Defendants to alter their BP Shop and the Parking Lot to make them readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

    iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination at BP Shop and the Parking Lot;

    iv.) Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain full and equal enjoyment of BP Shop and the Parking Lot owned, operated, maintained, leased, or leased to, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

    v.)  Ordering Defendants to make BP Shop and the Parking Lot readily accessible to and usable by Plaintiff and other individuals with disabilities.

    vi.) Ordering the issuance of an injunction that requires Defendants

        i.   to prepare architectural plans remedying the ADA violations described in the Complaint, and

ii.   to provide Plaintiff's counsel with those plans for review within 60 days of the Court's Order.

vii.)     Ordering that the injunction affords Plaintiff 30 days to file a motion seeking relief on the basis that Defendants' proposed architectural plans are inadequate to remedy the ADA violations specified in the Complaint; and

viii.)     Ordering that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement or a ruling by the Court that the plans are adequate.

B.   Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C.   Enter declaratory judgment specifying that BP Shop and the Parking Lot owned, operated, leased, leased to, controlled, maintained, and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D.   Enter an order requiring Defendants to alter BP Shop and the Parking Lot to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.   Hold Defendants liable for $500 in statutory monetary damages for their violations and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

F.     Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.     Retain its jurisdiction over Defendants until their unlawful practices, acts, and omissions no longer exist;

H.     Find that Plaintiff is a prevailing party in this litigation.

I.     Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.     Award such other and further relief as it deems necessary, just, and proper.


## JURY DEMANDED

Plaintiff demands a trial by jury of all the issues of fact and damages.


Dated: October 14, 2024


*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Attorney for Plaintiff
5215 65th Pl., #5D
Maspeth, NY 11378
Tel: (347) 796-0712
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify, under penalty of perjury, that on October 14, 2024, I filed the foregoing Complaint with the Court via CM/ECF, which caused notice to be served upon all e-filing attorneys of record. In addition, I also mailed copies of the foregoing Complaint by the United States mail, first class mail, postage prepaid, to the Civil Rights Bureau and the New York City Commission on Human Rights at the following addresses: Civil Rights Bureau, 28 Liberty Street, New York, NY 10005; and Damion K. L. Stodola, General Counsel, NYC Commission on Human Rights, 22 Reade Street, 2nd Floor, New York, NY 10007.

Dated: October 14, 2024

*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Attorney for Plaintiff
5215 65th Pl., #5D
Maspeth, NY 11378
Tel: (347) 796-0712
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*